# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No.:  23-00051-01-CR-W-HFS |
| WALTER ANTWINE MOORE, | |
| Defendant. | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

**1.    The Parties.**    The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Jeffrey P. Ray, United States Attorney, and William A. Alford III, Assistant United States Attorney, and the defendant, Walter Antwine Moore ("the defendant"), represented by Shawn LeRoy Blair.

The defendant understands and agrees that this plea agreement is only between Walter Antwine Moore and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

**2.    Defendant's Guilty Plea.**    The defendant agrees to and hereby does plead guilty to Counts One and Two of the Indictment and to plead guilty to the Count charged in Case No. 23CR069-GFK filed in the United States District Court for the Northern District of Oklahoma and transferred to this Court pursuant to Rule 20 of the Federal Rules of Criminal Procedure.

Count One of this case charges the defendant with a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), that is, intentionally possessing with intent to distribute fifty grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance. Count Two of this case charges the defendant with a violation of 18 U.S.C. § 924(c)(1)(A)(i), that is possession of a firearm in furtherance of a drug trafficking offense. The Count of the indictment charged in Case No. 23CR069-GFK filed in the United States District Court for the Northern District of Oklahoma that was transferred to this district charges the defendant with a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vi), that is, intentionally possessing with intent to distribute 40 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, commonly known as fentanyl, a Schedule II controlled substance. By entering into this plea agreement, the defendant admits that he knowingly committed these offenses, and is in fact guilty of these offenses.

**3.** **Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offenses to which defendant is pleading guilty are as follows:

**Counts One and Two:**

On January 7, 2023, the St. Joseph, Missouri, Police Department received a 911 call that involved a report that a male had stolen a bag of chips and was selling drugs at Speedy's convenience store located at 1525 St. Joseph Avenue, St. Joseph, Missouri. The St. Joseph Police Officers were dispatched to the convenience store to investigate.

Officers Woolery and Davis were dispatched to the convenience store. They were informed by dispatch that the subject had "asked customers if they wanted drugs and he [the subject] had like two or three bags of drugs." The subject was described as a black male wearing a blue stocking cap and black puffy vest and he was driving a white car bearing an Oklahoma license plate bearing the number JHL706.

Officers went to the convenience store at 1525 St. Joseph Ave., but they did not observe a vehicle or person that matched the dispatch description. They then checked other gas

2

stations on St. Joseph Avenue. While doing so, they noticed the white car that was referenced by the dispatch caller; it was parked at a Quickstop located at 2143 St. Joseph Avenue, St. Joseph, Missouri, within the Western District of Missouri.

Officer Woolery activated his emergency lights and parked his patrol vehicle directly behind the white vehicle, a 2021 Toyota Camry, with Oklahoma license plates. Officer Woolery observed a white female in the front passenger seat. Officer Woolery observed a black male who was at the entrance to the Quickstop. That male was wearing clothing that matched the description of the person who was reportedly attempting to sell drugs.

Officers approached the male subject. Officer Woolery asked the subject, who was later identified as the defendant, if the white vehicle was his and the defendant replied that it was a rental car. Officer Woolery explained that he was dispatched on a call and the subject asked if they were investigating something serious. Officer Woolery believed the subject started to look nervous and he was looking around. Based on Officer Woolery's experience, he believed the subject was contemplating fleeing on foot. Officer Woolery began to approach the defendant to close the distance between the two. Officer Woolery instructed the defendant to sit down on the curb. The defendant stepped over the curb, but then suddenly turned away from Officer Woolery and his right hand went to his front side. As Officer Woolery had been told the defendant was selling drugs and he knew drug dealers commonly have firearms, Officer Woolery suspected that the defendant might be reaching for a firearm. Because the defendant was not complying with Officer Woolery's instructions and because of his concerning movements, Officer Woolery grabbed the defendant from behind and took him to the ground. Office Woolery grabbed the defendant's left wrist and held it behind his back. Officer Woolery held the defendant there until Officer Davis arrived on scene and handcuffed the subject.

The female passenger in the white vehicle exited the vehicle and began walking towards the officers. The officers put her in handcuffs without incident.

The defendant initially falsely reported that he was Robert Taylor. Investigators later confirmed his true identity was Walter Antwine Moore. Officer Woolery asked the female for her identification, and she indicated that it was in her phone wallet in the car. Officer Woolery opened the front passenger car and reached into the car to grab the female's phone that was near the center console. While grabbing the phone wallet, Officer Woolery noticed a clear plastic baggy sitting in plain view that was in the cubby under the radio between the gearshift and the dash. Inside the baggy were smaller clear plastic baggies containing balls of a white substance. Officer Woolery immediately recognized the packaging as being consistent with the packaging used to hold illicit drugs.

Officer Woolery conducted a probable cause search of the vehicle. During the search, law enforcement officials found the following items of investigative significance in addition to the baggies that were in the cubby under the radio:

3

- Under the front passenger seat there was a large clear plastic baggy containing suspected methamphetamine;

- On the floorboard behind the driver's seat was a black Adidas draw-string bag. Inside the bag were large clear plastic baggies containing suspected methamphetamine. Also in the bag was a U.S. Bank statement belonging to Walter Moore. There was also a Glock magazine that was loaded with ammunition;

- Under the front driver's seat was a loaded black, Glock, Model 30, .45 caliber, semi-automatic handgun, bearing serial number BYDH779 and an extended magazine capable of holding 24 rounds of ammunition; and

- In the center console cup holder there was a small plastic baggy with a small amount of multi-colored chunks of an unknown substance/pills.

Law enforcement officials then towed the Toyota Camry car to a city tow lot.

At the police station, Officer Woolery began to book the female passenger. While he was doing that, Defendant Moore began yelling and kicking his cell door. The defendant asked why his wife was in jail. Officer Woolery replied that per department policy they were both under arrest to investigate the charges. The defendant then spontaneously stated that the drugs were his and not his wife's drugs.

The gross weight of the recovered methamphetamine was approximately 284.8 grams.

The defendant provided an identification card to Officer Woolery that had his photograph on the card, and it indicated that his name was "Walter Moore." Officers discovered that the name Robert Taylor and Walter Moore were associated with one another. Officer Davis then used a fingerprint machine to identify the defendant and the machine indicated that the defendant was Walter Moore. There are numerous aliases associated with the defendant.

Prior to January 7, 2023, the defendant had previously been convicted of numerous offenses that carried terms of imprisonment in excess of one year. One of his prior convictions was a federal conviction for knowingly being a felon in possession of a firearm. The defendant has served more than a year of imprisonment on multiple occasions. The defendant admits that he knew he was a convicted felon who was prohibited from possessing a firearm.

The amount of methamphetamine that was seized from the Toyota Camry was substantial and consistent with a drug trafficking amount. Additionally, drug traffickers commonly possess firearms to protect their valuable drugs and illicit drug proceeds. They are commonly the target of robbery and due to the fact that they are engaged in illegal activity they commonly do not go to law enforcement for assistance when attacked.

4

Rather they use firearms to protect themselves, their drugs and their drug proceeds.

Pursuant to this plea agreement, the defendant admits that he knowingly possessed the methamphetamine recovered from the Toyota Camry and he possessed it with the intent to distribute it. Additionally, the defendant admits that he knowingly possessed the recovered Glock, Model 30, .45 caliber, semi-automatic handgun, bearing Serial Number BYDH779 and he did so in furtherance of his possession of methamphetamine with the intent to distribute it.

## RULE 20 - THE COUNT OF THE INDICTMENT FROM THE NORTHERN DISTRICT OF OKLAHOMA

On December 6, 2022, at approximately 2 a.m., Defendant Walter Moore was gambling at the Downstream Casino in Quapaw, Oklahoma, within the Northern District of Oklahoma. After quickly losing over $1,000 at a blackjack table, the defendant became belligerent with a female blackjack dealer. The defendant began cursing at her, making vague threats, and reaching into his coat as if he was armed. The pit boss asked him to leave, and Moore stated if he left it would involve "yellow police tape and lights and sirens." The pit boss then summoned the Deputy Quapaw Marshals.

Deputy Marshal Gibson approached Defendant Moore, because he was concerned that Moore did have a gun and due to the comments Moore made to staff. Moore was asked to do a pat-down for the safety of Deputy Marshal Gibson and the patrons of the casino. Moore started to back away from Deputy Marshal Gibson and became agitated.

Moore refused and when Deputy Marshal Gibson pressed the issue of the pat-down. Moore became irate and reached with his right hand into this jacket toward his waistband. Deputy Marshal Gibson believed that he was grabbing a gun, drew his gun. Deputy Marshal Gibson then ordered Moore to take his hand out of his jacket multiple times.

Moore took his hand out of his jacket and Deputy Marshal Gibson viewed that he had a baggie in his hands with something blue inside it. Deputy Marshal Gibson grabbed Moore. Moore put his hand back in his jacket as if he was grabbing a gun and came toward Deputy Marshal Gibson. Moore tried to push past the deputy and run. Deputy Marshal Gibson took Moore to the ground. As they were scuffling, Moore took the baggie he was holding and hit Deputy Marshal Gibson with it. The bag exploded and small blue pills scattered.

As the scuffle continued, Moore was trying to keep his hand underneath his body and Deputy Marshal Gibson believed that he was still trying to get a gun. Moore was ordered several times to put his hands behind his back. Moore refused and continued to fight while clinching what was left in the baggie of pills in his right hand.

Casino security staff helped Deputy Marshal Gibson subdue Moore and place handcuffs on him. The pills were then collected and seized. Staff gathered approximately 913 blue pills with an "M" printed on one side and a "30"printed on the other. The officers

believed these pills contained fentanyl as they were consistent with counterfeit M30 pills laced with fentanyl that they had previously seen.

The pills were sent to the DEA Lab for analysis. The laboratory's analysis concluded that the pills contained N-Phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (commonly known as Fentanyl). The total weight of the fentanyl pills was approximately 97.6 grams.

This incident was caught on video by multiple fixed and body worn cameras.

Pursuant to this plea agreement, the defendant admits that he knowingly possessed these fentanyl pills with the intent to distribute them.

**RELEVANT CONDUCT**

On February 7, 2023, an anonymous tip was received from the Springfield, Missouri Police Department regarding a black male subject referred to as "Malik Wali" arriving on the Amtrak #4 Southwest Chief that originated from Los Angeles, California. The city of Los Angeles is a known "Source City" for illegal controlled substances and numerous seizures and arrests have been made from this route.

According to the tip, this subject was possibly in possession of approximately 1,000 fentanyl pills individually wrapped for distribution. This information came from an associate who works directly with the courier's girlfriend who is reportedly in a volatile relationship with the subject.

Through criminal computer checks and social media searches, the subject's real name was determined to be Walter Antwine Moore, the defendant. Amtrak Police Department personnel were contacted and upon checking the passenger manifest, it was determined that this subject was on the train arriving to Kansas City, Missouri on February 10, 2023.

On February 10, 2023, at approximately 6:00 a.m., members of the Missouri Western Interdiction and Narcotics Task Force (MoWIN) responded to the Amtrak Terminal located at #30 W. Pershing Road, Kansas City, Jackson County, Missouri to await the arrival of the aforementioned train.

At approximately 6:15 a.m., the train arrived at the platform where passengers began to disembark. Task Force Officer Errol Riggins observed Walter Moore exit the first coach car wearing a red ball cap and red puffy coat carrying two (2) backpacks and a small duffel bag. Moore proceeded to the elevator and detectives who were waiting in the lobby of Union Station were notified, via police radio.

Upon exiting the Amtrak ticketing/waiting area, Detective Brandon Winders and Detective Collin Love made contact with Moore, who had stopped to use his cellular telephone in the breeze way between the ticketing/waiting area and entrance into Union Station.

6

Detective Winders identified himself as a police officer by showing Moore his department-issued badge and identification card. Detective Winders asked Moore if he could speak with him, to which Moore stated, "Yeah" and then the defendant asked why they were harassing him.

Detective Winders explained to Moore that he talks to passengers on the train that could be transporting illegal narcotics, firearms, or large amounts of United States currency. Detective Winders asked Moore if he could see his train ticket and identification. Moore stated he didn't have a ticket, because it was purchased by his family, however, Moore did provide a State of Missouri Identification Card bearing the name of "Walter Antwine Moore."

During the contact, Moore became confrontational with Detective Winders and began asking why he was being profiled and harassed. Detective Winders advised Moore that other passengers are checked and if he could search his bags, at which time, Moore stated he would need a search warrant or lawyer to search his bags. Detective Winders asked Moore if a narcotic detecting canine could conduct a sniff check of his luggage. Moore agreed.

Detective Love signaled to Detective Antonio Garcia to have his canine, Zeus, conduct a sniff check, at which time Moore immediately turned away to flee on foot toward the Amtrak ticketing/waiting area. Moore was immediately tackled to the floor by Detective Winders and detained with the assistance of other detectives and tactical response officers who were positioned in the vicinity.

At the conclusion of the altercation, a bundle wrapped in clear cellophane wrap containing what appeared to be blue counterfeit "M30" pills were observed on the floor in close proximity of where Moore was detained, as witnessed by an Amtrak employee. This employee was in the vicinity of the altercation and observed the bundle laying on the ground after Moore was lifted from the ground.

Detective Garcia responded with Canine Zeus to conduct the sniff check. Upon coming into contact with Moore's bags, Canine Zeus alerted. This alert indicated to Detective Garcia that Zeus had detected the scent of controlled substances emanating from the bags.

Moore was escorted to the breezeway of the main entry doors of Union Station where he was thoroughly searched and questioned. While standing in the breezeway, Moore observed a tactical officer holding the recovered bundle and spontaneously uttered, "That ain't mine," referring to the bundle of suspected counterfeit "M30" pills. The defendant made additional statements that someone must have put that (bundle) on him.

TFO Riggins contacted Moore and informed him of the reason for his detainment. During that time, TFO Riggins asked Moore if his bags could be searched, which Moore gave consent and signed a KCMOPD Consent to Search Form acknowledging his consent. A search of Moore's two backpacks and duffel bag was conducted, and no contraband was discovered.

Moore was transported to the KCMOPD East Patrol Division Detention Unit for booking.

A field-test, utilizing a MX908 Mass Spectrometer device, confirmed the presence of fentanyl, a Schedule II controlled substance, and DMT (N-dimethyltryptamine) in the seized pills. The total gross weight of the bundle was 223.27 grams (approximately 2,300 pills).

This amount of fentanyl is consistent with drug trafficking, not personal use.

Pursuant to this plea agreement, the defendant admits that he knowingly possessed these fentanyl pills and he did so with the intent to distribute it.

**4.** **Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement will be used for the purpose of determining defendant's guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that in calculating the offense level for the charge[s] to which defendant is pleading guilty, the conduct charged in any dismissed counts of the indictment as well as all other uncharged related criminal activity may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2), or as part of the "offense of conviction" pursuant to U.S.S.G. § 1B1.2.

**5.** **Statutory Penalties.** The defendant understands that upon his plea of guilty to Count One of the Indictment charging him with possession of 50 grams or more of methamphetamine with the intent to distribute, the minimum penalty the Court may impose is five years of imprisonment, while maximum penalty the Court may impose is not more than forty years of imprisonment, a $5 million fine, not less than four years of supervised release, an order of restitution, and a $100 mandatory special assessment per felony count of conviction

8

which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class B felony.

The defendant understands that upon his plea of guilty to Count Two of the Indictment charging him with possession of a firearm in furtherance of a drug trafficking offense, specifically the offense charged in Count One, the minimum penalty the Court may impose five years of imprisonment that must run consecutively to any other adjudge punishment, while the maximum penalty the Court may impose is not more than Life imprisonment (consecutive), not more than $250,000 fine, not more than five years' supervised release, and a Class A felony.

The defendant understands that upon his plea of guilty to the Count of the indictment charged in Case No. 23CR069-GFK filed in the United States District Court for the Northern District of Oklahoma that was transferred to this district, the minimum penalty the Court may impose is five years of imprisonment, while maximum penalty the Court may impose is not more than forty years of imprisonment, a $5 million fine, not less than four years of supervised release, [an order of restitution, and a $100 mandatory special assessment per felony count of conviction which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class B felony.

**6. Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

> a.   in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission. While these Guidelines are advisory in nature, and the Court ordinarily would have the discretion to impose a sentence either less than or greater than the court-determined advisory Guidelines range, in this instance the parties agree, pursuant to Rule 11(c)(1)(C), that the Court must impose sentence as follows: **a term of imprisonment of 120 months on Count One of the Indictment to run concurrently with the term of imprisonment on the count of the indictment charged in Case No. 23CR069-GFK filed in the**

9

United States District Court for the Northern District of Oklahoma, a term of five years of supervised release to run concurrently with all other terms of adjudge supervised release, and a $100 mandatory special assessment; on Count Two a sentence of 60 months' imprisonment that must run <u>consecutive</u> to any other term of adjudged imprisonment, a term of five years of supervised release to run concurrently with all other terms of adjudged supervised release, and a $100 mandatory special assessment; a term of imprisonment of 120 months on the count of the indictment charged in Case No. 23CR069-GFK filed in the United States District Court for the Northern District of Oklahoma that will run concurrently with term of imprisonment adjudged on Count One, a term of five years of supervised release to run concurrently with all other terms of adjudge supervised release, and a $100 mandatory special assessment – accordingly, the total sentence must be 180 months of imprisonment, five years of supervised release on all three counts to run concurrently, and $300 mandatory special assessments. If the court accepts this plea agreement, it must inform the defendant that sentence will be imposed in accordance with this agreement of the parties. If the court rejects this plea agreement, it must, on the record and in open court, inform the parties that the court rejects the plea agreement, advise the defendant personally that because the Court is rejecting the plea agreement the Court is not required to impose sentence in accordance with the agreement of the parties, give the defendant an opportunity to withdraw defendant's guilty plea, and further advise the defendant that if the plea is not withdrawn, the Court may dispose of the case less favorably toward the defendant than the plea agreement contemplated;

  b. the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

  c. in addition to a sentence of imprisonment, the Court may impose a term of supervised release of at least four years, but if this binding plea agreement, if accepted, the Court will adjudge a term of five years of supervised release on each count to run concurrently;

  d. the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

  e. any sentence of imprisonment imposed by the Court will not allow for parole;

  f. the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office; and

g.   the defendant may not withdraw his guilty plea solely because of the nature or length of the sentence imposed by the Court.

h.   The defendant agrees that the United States may institute civil, judicial or administrative forfeiture proceedings against all forfeitable assets in which the defendant has an interest, and that he will not contest any such forfeiture proceedings.

7.   **Government's Agreements.**   Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against defendant for any federal criminal offenses related to the defendant's drug trafficking and federal firearms offenses for which it has venue and which arose out of the defendant=s conduct described above.   Additionally, assuming the Court approves this plea agreement and sentences the defendant in accordance with the defendant's pleas of guilty, the United States Attorney's Office for the Northern District of Oklahoma, as part of this plea agreement, agrees not to bring any additional charges against the defendant for any federal criminal offenses related to the defendant's drug trafficking offenses that are summarized in the factual basis of this plea agreement for which it has venue and which arose out of the defendant's conduct described in the factual basis of this plea agreement.   Last, the United States Attorney for the Western District of Missouri agrees to dismiss Counts Three and Four at sentencing.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

11

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives defendant's right to challenge the initiation of the dismissed or additional charges if defendant breaches this agreement. The defendant expressly waives the right to assert a statute of limitations defense if the dismissed or additional charges are initiated following defendant's breach of this agreement. The defendant further understands and agrees that if the Government elects to file additional charges against defendant following a breach of this plea agreement, defendant will not be allowed to withdraw defendant's guilty plea.

**8. Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character, and conduct of the defendant, including the entirety of defendant's criminal activities. The defendant understands these disclosures are not limited to the count[s] to which defendant has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

12

9. **Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw defendant's plea[s] of guilty only if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal.

10. **Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

a. The Sentencing Guidelines do not bind the Court and are advisory in nature. However, if the court accepts this Rule 11(c)(1)(C) plea agreement, the Court is bound to impose the sentence agreed to by the parties, as set forth in paragraph 6 above;

b. The applicable Guidelines section for the offense of conviction is U.S.S.G. § 2D1.1, which provides for a base offense level of <u>at least</u> 30 based on the converted drug weight of the defendant's relevant conduct in this case;

c. The parties agree that the applicable Guidelines range for Count Two of the indictment in this district is 60 months of imprisonment that must run consecutively to any other adjudged imprisonment in accordance with U.S.S.G. § 2K2.2(b);

d. The defendant has admitted his guilt and clearly accepted responsibility for his actions, and has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Therefore, he is entitled to a three-level reduction pursuant to § 3E1.1(b) of the Sentencing Guidelines. The Government, at the time of sentencing, will file a written motion with the Court to that effect, unless the defendant (1) fails to abide by all of the terms and conditions of this plea agreement and his pretrial release; or (2) attempts to withdraw his guilty pleas, violates the law, or otherwise engages in conduct inconsistent with his acceptance of responsibility;

13

e.   The parties reserve their rights to advocate for or object to any other sentencing enhancements or reductions under the Guidelines;

f.   There is no agreement between the parties regarding the defendant's criminal history category.   The parties agree that the Court will determine his applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

g.   The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does not bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels.   Additionally, the failure of the Court to accept these stipulations will not, as outlined in Paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw his plea of guilty;

h.   The United States agrees not to seek an upward departure or an upward variance from the Guidelines range deemed applicable by the Court. The defendant may seek a downward departure or a downward variance from the Guidelines range deemed applicable by the Court, but under no circumstances may the defendant recommend a sentence below the statutory minimum sentence based on his pleas of guilty (the defendant understands and agrees that the statutory minimum sentence in this case is a total of 120 months of imprisonment if the Court were to run the two possession within intent to distribute controlled substances offenses concurrently while running the possession of a firearm in furtherance of a drug trafficking offense consecutively).   This agreement by the parties is not binding upon the Court or the United States Probation Office and the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable";

i.   The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum.   The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the Indictment.   The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay;

j.   The defendant understands and agrees that the factual admissions contained in Paragraph 3 of this plea agreement, and any admissions that he will make during his plea colloquy, support the imposition of the agreed-upon Guidelines calculations contained in this agreement.

14

**11.    Effect of Non-Agreement on Guidelines Applications.**    The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in Paragraph 10, and its subsections.    As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

**12.    Change in Guidelines Prior to Sentencing.**    The defendant agrees that if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option.    If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

**13.    Government's Reservation of Rights.**    The defendant understands that the United States expressly reserves the right in this case to:

    a.    oppose or take issue with any position advanced by defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

    b.    comment on the evidence supporting the charges in the indictment as well as the indictment from the Norther District of Oklahoma that was transferred to this district in accordance with Rule 20 of the Federal Rules of Criminal Procedure;

    c.    oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court does not impose the sentence agreed to by parties in this agreement; and

    d.    oppose any post-conviction motions for reduction of sentence, or other relief.

14. **Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that defendant has been advised of, understands, and knowingly and voluntarily waives the following rights:

> a. the right to plead not guilty and to persist in a plea of not guilty;

> b. the right to be presumed innocent until defendant's guilt has been established beyond a reasonable doubt at trial;

> c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

> d. the right to confront and cross-examine the witnesses who testify against defendant;

> e. the right to compel or subpoena witnesses to appear on defendant's behalf; and

> f. the right to remain silent at trial, in which case defendant's silence may not be used against defendant.

The defendant understands that by pleading guilty, defendant waives or gives up those rights and that there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, defendant's answers may later be used against defendant in a prosecution for perjury or making a false statement. The defendant also understands defendant has pleaded guilty to a felony offense and, as a result, will lose the right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

15. **Waiver of Appellate and Post-Conviction Rights.**

> a. The defendant acknowledges, understands and agrees that by pleading guilty pursuant to this plea agreement he waives his right to appeal or collaterally

16

attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct.

b. The defendant expressly waives his right to appeal his sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal his sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

## 16. **Financial Obligations.**

By entering into this plea agreement, the defendant understands and agrees to the following financial obligations:

a. The Court may] order restitution to the victims of the offense to which the defendant is pleading guilty. The defendant agrees that the Court may order restitution in connection with the conduct charged in any counts of the indictment which are to be dismissed and all other uncharged related criminal activity.

b. The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine.

c. The defendant will fully and truthfully disclose all assets and property in which defendant has any interest, or over which the defendant exercises control directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full.

d. Within 10 days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States

17

makes a recommendation to the Court regarding the defendant's acceptance of responsibility.

e. At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of substitute assets and restitution.

f. The defendant hereby authorizes the USAO to obtain a credit report pertaining to defendant, which will be used by the USAO to evaluate the defendant's ability to satisfy any financial obligations imposed as part of the sentence.

g. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $300 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of defendant's fulfillment of this obligation at the time of sentencing.

h. The defendant certifies that defendant has made no transfer of assets or property for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that defendant will make no such transfers in the future.

i. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution, and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

**17.** **Waiver of FOIA Request.** The defendant waives all rights, whether asserted directly or by a representative, to request or receive, or to authorize any third party to request or receive, from any department or agency of the United States any records pertaining to the

18

investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

**18.** **Waiver of Claim for Attorney's Fees.** The defendant waives all claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

**19.** **Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw defendant's plea of guilty.

The defendant also understands and agrees that in the event defendant violates this plea agreement, all statements made by defendant to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by defendant before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against defendant in any and all criminal proceedings. The defendant waives any rights that defendant might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by defendant subsequent to this plea agreement.

**20.  Defendant's Representations.**  The defendant acknowledges entering into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel.   The defendant acknowledges that defendant is satisfied with the assistance of counsel, and that counsel has fully advised defendant of defendant's rights and obligations in connection with this plea agreement.   The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, defendant's attorneys or any other party to induce defendant to plead guilty.

**21.  No Undisclosed Terms.**  The United States and defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

**22.  Standard of Interpretation.**  The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings.   The parties further agree that, in interpreting this agreement,

any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

Jeffrey P. Ray
Acting United States Attorney

Dated: 7/1/25

William A. Alford III
Assistant United States Attorney

I have consulted with my attorney and fully understand all of my rights with respect to the offenses charged in the Indictments from both the Western District of Missouri and the Northern District of Oklahoma. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: 7-1-25

Walter Antwine Moore
Defendant

I am Walter Antwine Moore's attorney. I have fully explained to him his rights with respect to the offenses charged in the the Indictments from both the Western District of Missouri and the Northern District of Oklahoma. Further, I have reviewed with him the provisions of the Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with him. To my knowledge, Walter Antwine Moore's decision to enter into this plea agreement is an informed and voluntary one.

Dated: 7-1-25

Shawn LeRoy Blair
Attorney for Defendant

21